# CIVIL COVER SHEET

JS-44 (Rev. 5/12 DC)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____<br>**(EXCEPT IN U.S. PLAINTIFF CASES)** | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____<br>**(IN U.S. PLAINTIFF CASES ONLY)**<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 2 U.S. Government Defendant
○ 3 Federal Question (U.S. Government Not a Party)
○ 4 Diversity (Indicate Citizenship of Parties in item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place an X in one category, A-N, that best represents your Cause of Action and **one** in a corresponding Nature of Suit)

○ **A.** *Antitrust*

410 Antitrust

○ **B.** *Personal Injury/Malpractice*

310 Airplane
315 Airplane Product Liability
320 Assault, Libel & Slander
330 Federal Employers Liability
340 Marine
345 Marine Product Liability
350 Motor Vehicle
355 Motor Vehicle Product Liability
360 Other Personal Injury
362 Medical Malpractice
365 Product Liability
367 Health Care/Pharmaceutical Personal Injury Product Liability
368 Asbestos Product Liability

○ **C.** *Administrative Agency Review*

151 Medicare Act

**Social Security**
861 HIA (1395ff)
862 Black Lung (923)
863 DIWC/DIWW (405(g))
864 SSID Title XVI
865 RSI (405(g))
**Other Statutes**
891 Agricultural Acts
893 Environmental Matters
890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D.** *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E.** *General Civil (Other)*   **OR**   ○ **F.** *Pro Se General Civil*

**Real Property**
210 Land Condemnation
220 Foreclosure
230 Rent, Lease & Ejectment
240 Torts to Land
245 Tort Product Liability
290 All Other Real Property

**Personal Property**
370 Other Fraud
371 Truth in Lending
380 Other Personal Property Damage
385 Property Damage Product Liability

**Bankruptcy**
422 Appeal 27 USC 158
423 Withdrawal 28 USC 157

**Prisoner Petitions**
535 Death Penalty
540 Mandamus & Other
550 Civil Rights
555 Prison Conditions
560 Civil Detainee – Conditions of Confinement

**Property Rights**
820 Copyrights
830 Patent
840 Trademark

**Federal Tax Suits**
870 Taxes (US plaintiff or defendant)
871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
625 Drug Related Seizure of Property 21 USC 881
690 Other

**Other Statutes**
375 False Claims Act
400 State Reapportionment
430 Banks & Banking
450 Commerce/ICC Rates/etc.
460 Deportation
462 Naturalization Application
465 Other Immigration Actions
470 Racketeer Influenced & Corrupt Organization

480 Consumer Credit
490 Cable/Satellite TV
850 Securities/Commodities/ Exchange
896 Arbitration
899 Administrative Procedure Act/Review or Appeal of Agency Decision
950 Constitutionality of State Statutes
890 Other Statutory Actions (if not administrative agency review or Privacy Act)

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/Privacy Act* | ○ **J.** *Student Loan* |
|---|---|---|---|
| 530 Habeas Corpus – General<br>510 Motion/Vacate Sentence<br>463 Habeas Corpus – Alien Detainee | 442 Civil Rights – Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | 895 Freedom of Information Act<br>890 Other Statutory Actions (if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | 152 Recovery of Defaulted Student Loan (excluding veterans) |
| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
| 710 Fair Labor Standards Act<br>720 Labor/Mgmt. Relations<br>740 Labor Railway Act<br>751 Family and Medical Leave Act<br>790 Other Labor Litigation<br>791 Empl. Ret. Inc. Security Act | 441 Voting (if not Voting Rights Act)<br>443 Housing/Accommodations<br>440 Other Civil Rights<br>445 Americans w/Disabilities – Employment<br>446 Americans w/Disabilities – Other<br>448 Education | 110 Insurance<br>120 Marine<br>130 Miller Act<br>140 Negotiable Instrument<br>150 Recovery of Overpayment & Enforcement of Judgment<br>153 Recovery of Overpayment of Veteran's Benefits<br>160 Stockholder's Suits<br>190 Other Contracts<br>195 Contract Product Liability<br>196 Franchise | 441 Civil Rights – Voting (if Voting Rights Act) |

**V. ORIGIN**

○ 1 Original Proceeding   ○ 2 Remand from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi-district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23 | **DEMAND $**<br>**JURY DEMAND:** | Check YES only if demanded in complaint<br>**YES**         **NO** |
|---|---|---|---|
| **VIII. RELATED CASE(S) IF ANY** | (See instruction) | **YES**           **NO** | If yes, please complete related case form |
| DATE: _____ | SIGNATURE OF ATTORNEY OF RECORD | /s Robert Ukeiley | |

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
**Authority for Civil Cover Sheet**

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and services of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the cover sheet.

**I.**   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, DC, 88888 if plaintiff is resident of United States but not Washington, DC, and 99999 if plaintiff is outside the United States.

**III.**   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

**IV.**   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of the case.

**VI.**   CAUSE OF ACTION: Cite the U.S. Civil Statute under which you are filing and write a brief statement of the primary cause.

**VIII.**   RELATED CASE(S), IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should endure the accuracy of the information provided prior to signing the form.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SIERRA CLUB<br>85 Second St. 2nd Floor<br>San Francisco, CA 94105<br><br>　　　Plaintiff,<br><br>v.<br><br>ROBERT PERCIASEPE<br>in his Official Capacity as<br>Acting Administrator,<br>United States Environmental Protection Agency<br>Ariel Rios Building<br>1200 Pennsylvania Avenue, N.W.<br>Washington, DC 20460,<br><br>　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civ. No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**I.   INTRODUCTION**

1.　　Plaintiff Sierra Club brings this Clean Air Act citizen suit "deadline case" to compel the Defendant Robert Perciasepe, in his official capacity as Acting Administrator of the United States Environmental Protection Agency ("EPA") to undertake overdue mandatory duties. Specifically, EPA has failed to take final action on a State Implementation Plan ("SIP") submittal addressing sulfur dioxide ("SO$_2$") emissions from electric utility steam generating units within the state of Georgia within 12 months of when the submittal was deemed administratively complete in violation of 42 U.S.C. § 74l0(k)(2) & (3). Additionally, he has failed to take action by granting or denying several petitions requesting that the Administrator object to Title V permits within 60 days of after Sierra Club filed the petitioners in violation of 42 U.S.C. §

1

7661d(b)(2). Accordingly, Plaintiff Sierra Club brings this action to compel EPA to perform its mandatory duties.

## II.   JURISDICTION

2.   This is a Clean Air Act citizen suit. Therefore, the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 7604(a). An actual controversy exists between the parties. This case does not concern federal taxes, is not a proceeding under 11 U.S.C. §§ 506 or 1146, and does not involve the Tariff Act of 1930. Thus, this Court has authority to order the declaratory relief requested under 28 U.S.C. § 2201. If the Court orders declaratory relief, 28 U.S.C. § 2202 authorizes this Court to issue injunctive relief.

## III.   NOTICE

3.   Sierra Club mailed notice of violations alleged in this complaint related to the failure to act on Georgia's SIP submittal to EPA on September 26, 2012.

4.   Sierra Club mailed notices of violations alleged in this complaint related to the failure to act on pending Title V requests to EPA on December 3, 2012.

5.   More than sixty days have passed since EPA received these "notice of intent to sue" letters. EPA has not remedied the violations alleged in this Complaint. Therefore, a present and actual controversy exists.

## IV.   VENUE

6.   This civil action is brought against an officer of the United States acting in his official capacity. EPA is headquartered in this judicial district. Defendant Robert Perciasepe officially resides in the District of Columbia. In addition, a substantial part of the events or omissions giving rise to the claims in this case occurred in the District of Columbia. Accordingly, venue is proper in this Court pursuant to 28 U.S.C. § 1391(e).

## V.   PARTIES

7.      Plaintiff Sierra Club is a national grassroots nonprofit conservation organization formed in 1892.  Sierra Club's purpose includes practicing and promoting the responsible use of earth's ecosystems and resources, and protecting and restoring the quality of the natural and human environment.

8.      Sierra Club has over 600,000 members nationally. Sierra Club's members live, work, recreate, and travel throughout the areas at issue in this case and will continue to do so on a regular basis.  Sulfur dioxide in the affected areas threatens, and will continue to threaten, the health and welfare of the Sierra Club's members.  Further, pollution authorized by the Title V permits in the affected areas threatens, and will continue to threaten, the health and welfare of the Sierra Club's members.  Sierra Club members' ability to enjoy the aesthetic qualities and recreational opportunities is diminished in the affected areas due to impacts from $SO_2$ pollution and due to the emissions authorized by the Title V permits.

9.      EPA's failure to timely perform the mandatory duties described herein also adversely affects Sierra Club, as well as its members, by depriving them of procedural protections and opportunities as well as information to which they are entitled under the Clean Air Act.  The failure of EPA to perform the mandatory duties also creates uncertainty for Sierra Club's members as to whether they are exposed to excess air pollution.

10.     The above injuries will continue until the Court grants the relief requested herein.

11.     Defendant Robert Perciasepe is the Acting Administrator of the United States Environmental Protection Agency.  In that role, Acting Administrator Perciasepe has been charged by Congress with the duty to administer the Clean Air Act, including the mandatory duties at issue in this case.

## VI.     LEGAL BACKGROUND

12.     Congress enacted the Clean Air Act to "speed up, expand, and intensify the war against air pollution in the United States with a view to assuring that the air we breathe throughout the Nation is wholesome once again." H.R. Rep. No. 1146, 91st Cong., 2d Sess. 1,1, 1970 U.S. Code Cong. & Admin. News 5356, 5356.

### SIP Submittals

13.     To assure clean air, the Act requires EPA to set National Ambient Air Quality Standards ("NAAQS") for certain pollutants.  NAAQS establish maximum allowable concentrations in the air for these pollutants, including sulfur dioxide.

14.     Under the Clean Air Act's cooperative federalism approach, States are primiarly responsible for establishing procedures to attain and maintain the NAAQS.  42 U.S.C. § 7410(a). States submit these procedures in the form of a SIP to the EPA, which reviews the submittal to ensure that they are adequate to meet statutory requirements.  42 U.S.C. § 7410(k)(1) – (4).

15.     The Clean Air Act requires EPA to determine whether any SIP submittal is administratively complete.  42 U.S.C. § 7410(k)(1)(B).  EPA must make this determination by "no later than [six] months after the date, if any, by which a State is required to submit the plan or revision." *Id.*  If EPA does not make a finding that the submission is administratively complete or not complete by the six month deadline, the submission is deemed complete by operation of law. *Id.*

16.     EPA has a mandatory duty to take final action on any administratively complete SIP submittal by approving in full, disapproving in full or approving in part and disapproving in part within 12 months of the date the submittal is deemed administratively complete.  42 U.S.C. § 7410(k)(2) and (3).

17. The Georgia SIP submittal addresses $SO_2$ emissions from the largest sources of these emissions, fossil fuel power plants. U.S. EPA, Integrated Science Assessment (ISA) for Sulfur Oxides – Health Criteria (Final Report), U.S. Environmental Protection Agency, Washington, DC, EPA/600/R-08/047F, ("EPA ISA for $SO_2$") at 5-1 (2008).

18. The effects of $SO_2$ on humans and the environment are profound. $SO_2$ has been linked to a number of illnesses (*e.g.,* adverse respiratory effects, including bronchoconstriction and increased asthma symptoms), and is an indicator of a larger group of $SO_X$, which form to make sulfate particles that cause or worsen emphysema and bronchitis, as well as heart disease. EPA ISA for $SO_2$ at xxxi, 5-2; 76 Fed. Reg. 19662, at 19666. In addition, EPA has determined that $SO_2$ affects our environment in a number of ways, including direct negative effects on vegetation, (e.g., decreased growth and death of plants), as well as acidification of water that results in impacts to biological organisms. 77 Fed. Reg. 20218, at 20224-27. It is vital that EPA take the required action in order to ensure the protection of public health and welfare against $SO_2$.

### Title V Permitting

19. The Clean Air Act was amended in 1990 to include operating permits under Title V of the Clean Air Act ("Title V Permits"), to promote the war against air pollution, to ensure compliance with all applicable requirements of the Clean Air Act, and to enhance enforceability of the Act. *See* 42 U.S.C. §§ 7661-7661f.

20. Under the Clean Air Act's cooperative federalism approach, States can apply to administer the Title V permitting program. 42 U.S.C. § 7410(a).

21. A primary purpose of the Title V permitting program is to reduce violations of the Clean Air Act and improve enforcement by recording in one document all of the air pollution control

requirements that apply to a source of emissions. *See New York Public Interest Research Group v. Whitman*, 321 F.3d 316, 320 (2d Cir. 2003). Major sources of air pollution cannot legally discharge pollutants into the air unless they have a valid Title V operating permit. 42 U.S.C. § 7661a(a). A Title V permit's term cannot exceed five years, at which point, the permittee must apply for a new permit.

22. The Clean Air Act provides that EPA may approve states' programs to administer the Title V permitting program with respect to sources within their borders. 42 U.S.C. § 7661a(d). EPA has approved Georgia's Title V permit program. The Georgia Environmental Protection Division ("GEPD") is responsible for issuing Title V permits in Georgia.

23. Before a Title V permit can be issued by a state with an approved Title V permit program, the State must forward a proposed Title V permit to EPA. 42 U.S.C. § 7661d(a)(1)(B). EPA then has 45 days in which it can review the proposed permit. EPA must object to the issuance of the permit if EPA finds that the permit does not comply with all applicable provisions of the Clean Air Act. 42 U.S.C. § 7661d(b)(1). However, as a practical matter, EPA does not review most proposed Title V permits forwarded to it by state permitting agencies.

24. After EPA's 45-day review period, "any person may petition the Administrator within 60 days" to object to the Title V permit. 42 U.S.C. § 7661d(b)(2).

25. Once EPA receives a petition for objection to a Title V permit, EPA must grant or deny that petition within 60 days. *Id.*; *New York Public Interest Research Group v. Whitman*, 214 F. Supp. 2d 1, 2 (D.D.C. 2002).

## VII.     STATEMENT OF FACTS

### Failure to Take Final Action on SIP Submittals

26.     EPA has failed to perform certain mandatory duties required by the Clean Air Act, including the failure to take final action, and publish notice of that action in the Federal Register, on the Georgia SIP submittal addressing Georgia Rule for Air Quality 391-3-1-.02(uuu) ("Rule uuu"), as required by 42 U.S.C. § 7410(k)(2) and (3).

27.     On July 20, 2010 Georgia submitted a SIP revision containing Rule uuu, which addresses $SO_2$ emissions from electric utility steam generating units.

28.      On January 20, 2011, Georgia's SIP submittal for Rule uuu was deemed administratively complete, either by operation of law or by EPA.

29.     Pursuant to 42 U.S.C. § 7410(k)(2) and (3), EPA was required to take final action on Georgia's Rule uuu SIP submittal, by approving in full, disapproving in full, or approving in part and disapproving in part by January 20, 2012.

### Failure to Take Action on Pending Title V Petitions

30.     Georgia Power owns and operates many major sources of air pollution in Georgia that burn coal to produce electricity.  Two of these major sources are Plant Scherer, located in Juliette, Georgia; and Plant Hammond, located in Coosa, Georgia.

31.     Georgia Power's coal-fired power plants – including plants Hammond and Scherer – emit millions of tons of particulate matter, sulfur dioxide, volatile organic compounds, nitrogen oxides, carbon monoxide, carbon dioxide and hazardous air pollutants.

32.     On September 10, 2011, GEPD issued for public notice and comment a draft Title V permit number 4911-207-0008-V-03-0 for Georgia Power Company's Scherer Steam-Electric Generating Plant ("Scherer Permit").

33. On October 11, 2011, GEPD issued for public notice and comment a draft Title V permit number 4911-115-0003-V-03-0 for Georgia Power Company's Hammond Steam-Electric Generating Plant ("Hammond Permit").

34. Sierra Club submitted written comments on GEPD's proposed Title V permits for Plant Scherer on October 21, 2011, and for Plant Hammond on November 14, 2011.  GEPD did not act on many of the comments that the Sierra Club raised.

35. EPA's 45 day review period for the Scherer Permit expired on April 14, 2012, and EPA did not object on its own initiative to the Scherer Permit during this review period.

36. EPA's 45 day review period for the Hammond Permit expired on April 16, 2012, and EPA did not object on its own initiative to the Hammond Permit during this review period.

37. Pursuant to 42 U.S.C. § 7661d(b)(2), via email and certified mail, return receipt requested dated June 13, 2012, Sierra Club timely submitted its petition to EPA seeking EPA's objection to the Scherer Permit.  EPA's Region 4 office acknowledged receipt of this petition via letter on June 18, 2012.

38. Pursuant to 42 U.S.C. § 7661d(b)(2), via email and certified mail, return receipt requested dated June 15, 2012, Sierra Club timely submitted its petition to EPA seeking EPA's objection to the Hammond Permit.  EPA's Region 4 office acknowledged receipt of this petition via letter on June 29, 2012.

39. EPA had until on or about August 12, 2012 to act upon Sierra Club's petition relating to the Scherer Permit.  EPA neither granted nor denied Sierra Club's petition within the statutory 60 day period.

40. EPA had until on or about August 14, 2012 to act upon Sierra Club's petition relating to the Hammond Permit. EPA neither granted nor denied Sierra Club's petition within the statutory 60 day period.

41. EPA still has not granted or denied the petitions as of the date of filing this Complaint.

## VIII. CLAIMS FOR RELIEF

### CLAIM ONE

**(Failure to take final action on an administratively complete SIP submittal.)**

42. Plaintiff incorporates by reference paragraphs 1 through 41.

43. EPA must take final action on an administratively complete submittal by approving in full, disapproving in full, or approving in part and disapproving in part within 12 months of the date of the submittal's administrative completeness finding. 42 U.S.C. § 7410(k)(2) and (3).

44. On July 20, 2010 Georgia submitted a SIP revision addressing Georgia Rule for Air Quality 391-3-1-.02(uuu) ("Rule uuu"), which addresses $SO_2$ emissions from electric utility steam generating units.

45. On January 20, 2011, either EPA or operation of law deemed administratively complete the Georgia submittal of Georgia Rule for Air Quality 391-3-1-.02(uuu), addressing $SO_2$ emissions from electric utility steam generating units.

46. Pursuant to 42 U.S.C. § 7410(k)(2) and (3), EPA had a mandatory duty to take final action on Georgia's Rule uuu submittal by no later than January 20, 2012.

47. EPA has failed to perform this mandatory duty.

### CLAIM TWO

**(Failure to Respond to Plaintiff's Petition for Objection to the Scherer Permit.)**

48. Plaintiff incorporates by reference paragraphs 1 through 41.

9

49. EPA has a mandatory duty to respond within 60 days to Plaintiff's petition requesting that EPA object to the Scherer Permit pursuant to 42 U.S.C. § 7661d(b)(2) ("The Administrator shall grant or deny such petition within 60 days after the petition is filed").

50. It has been more than 60 days since EPA received Plaintiff's petition requesting that EPA object to the Scherer Permit.

51. Defendant has not granted or denied Plaintiff's petition regarding the Scherer Permit.

52. EPA has failed to perform this mandatory duty and remains in violation of this obligation.

## CLAIM THREE

**(Failure to Respond to Plaintiff's Petition for Objection to the Hammond Permit.)**

53. Plaintiff incorporates by reference paragraphs 1 through 41.

54. EPA has a mandatory duty to respond within 60 days to Plaintiff's petition requesting that EPA object to the Hammond Permit pursuant to 42 U.S.C. § 7661d(b)(2) ("The Administrator shall grant or deny such petition within 60 days after the petition is filed").

55. It has been more than 60 days since EPA received Plaintiff's petition requesting that EPA object to the Hammond Permit.

56. Defendant has not granted or denied Plaintiff's petition regarding the Hammond Permit.

57. EPA has failed to perform this mandatory duty and remains in violation of this obligation.

## REQUEST FOR RELIEF

WHEREFORE, Sierra Club respectfully requests that the Court:

A. Declare that EPA is in violation of the Clean Air Act with regard to its failure to perform each mandatory duty listed above;

B. Issue a mandatory injunction requiring EPA to perform its mandatory duties by a certain date;

C. Retain jurisdiction of this matter for purposes of enforcing the Court's order;

D. Grant Sierra Club its reasonable costs of litigation, including attorneys' and expert witness fees; and

E. Grant such further relief as the Court deems proper.

Respectfully submitted,

/s Robert Ukeiley

_____
Robert Ukeiley
DDC Bar No. MD 14062
GreenLaw
104 Marietta Street, Suite 430
Atlanta, Georgia 30303
Tel: (859) 986-5402
Fax: (866) 618-1017
Email: rukeiley@igc.org

Counsel for Sierra Club

Dated: March 25, 2013